UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x
BENNIE GRAY,                                    :
                                                :
                       Plaintiff,               :
                                                :               **INITIAL REVIEW**
         -against-                              :               **ORDER**
                                                :
LIEUTENANT CORNELIIUS ROGERS, et al.,           :               3:24-cv-690 (VDO)
                                                :
                       Defendants.              :
------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

      Plaintiff Bennie Gray is an inmate in the custody of the Connecticut Department of Correction ("DOC") and incarcerated at the Osborn Correctional Institution. He brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 for violation of his First Amendment rights against the following employees of the New London Police Department: Lieutenant Cornelius Rogers, Patrol Officer Knotts, Patrol Officer John Doe, and Patrol Officer Jane Doe (collectively, "Patrol Officer Defendants"). (Compl., ECF No. 1.) Plaintiff sues defendants in their individual and official capacities.

      The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I.   **FACTUAL BACKGROUND**

While the Court does not set forth all the facts alleged in Plaintiff's Complaint, it summarizes his basic factual allegations here to give context to its rulings below.

On August 9, 2023, Plaintiff was in a blue Mercedes Benz (a company car provided by Plaintiff's employer, the Mystic Marriott) parked with the windows down on Fuller Street in New London. (Compl. ¶ 1.) Defendant Rogers, an off-duty New London Police Lieutenant, yelled toward Plaintiff, "I don't want no drug dealers on my street." (*Id.*) Plaintiff responded, "What did you say?" Rogers answered, "You heard me. I don't want no drug dealers on my street." (*Id.*)

After Plaintiff told Rogers to "shut the hell up," Rogers replied, "You have no idea who you [are] talking to." (*Id.*) Because he and Rogers grew up together and went to the same high school, Gray/Plaintiff interpreted this statement as a threat. (*Id.* at ¶¶ 2–3.) He asserts that Rogers has a reputation for bypassing the law when convenient, has been complicit in many illegal acts, was the subject of investigation within the New London Police Department, and has a history of claiming racial discrimination. (*Id.* at ¶¶ 4–5.)

On August 14, 2023, Plaintiff left his job at the Mystic Marriot and drove in the company Mercedes to meet a woman on Fuller Street. (*Id.* at ¶ 6.) When he arrived, the woman sat in his car, and they talked for about fifteen minutes. (*Id.*) The woman then returned to an apartment on Fuller Street, and Plaintiff drove toward Garfield Avenue in New London. (*Id.* at ¶ 7.) After Plaintiff passed Garfield Avenue, he turned into a "complex" and drove around toward the exit. (*Id.*)

After he noted several police vehicles pulling into the complex across from him, Plaintiff drove to the H&T convenience store where he met his foster brother, Henry Banks.

2

(*Id.* at ¶¶ 7–8.) Plaintiff and Banks sat in Plaintiff's car waiting for Plaintiff's food to be prepared. (*Id.* at ¶ 8.) After pulling away from the H&T convenience store, Plaintiff was turning onto Jefferson Avenue, when he was signaled to pull over by police sirens and lights. (*Id.*) After Plaintiff pulled over, several New London Police Officers (presumably the Patrol Officer Defendants) approached him. (*Id.*)

The officers asked him for his license and registration and requested him to lower his window. (*Id.* at ¶ 9.) Officer Knotts ordered Gray to exit his vehicle. (*Id.*) After Gray asked why he had to be outside of his vehicle, Officer Knotts stated, "Someone saw you selling drugs out of the window." (*Id.*) Gray inquired about the identity of the individual to whom he as allegedly selling drugs. Plaintiff also stated that the accusation was "Lieutenant Rogers' doing" and that the cameras around Lieutenant Rogers' house would show if Plaintiff was selling drugs. (*Id.*) Gray explained his past relationship to Rogers and that Rogers had "sicked (sic) the officer on him in retaliation" because he did not "like it" when Plaintiff had recently "talked back to him." (*Id.* at ¶ 10.)

After a supervisor arrived on the scene and was briefed, the supervisor immediately ordered the police officers to put Plaintiff back into his vehicle. (*Id.* at ¶ 11.) Plaintiff was then given a citation because his tinted windows were too dark. (*Id.*)

Plaintiff later pleaded not guilty to the motor vehicle charge and never heard anything further about the citation ticket. (*Id.* at ¶ 12.) He took pictures of the company car windows that have a yellow sticker indicating the window tints were within the legal limits. (*Id.*)

II.     **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, courts must review civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that: "(1) is frivolous,

3

malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1) – (2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 545).

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73,

4

79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839 (CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III.  DISCUSSION

Plaintiff's Complaint asserts claims under 42 U.S.C. § 1983 for Fourth Amendment violation and First Amendment retaliation and under state law for harassment against Lieutenant Rogers and the Patrol Officer Defendants.

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991))). This is true with respect to supervisory officials as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" to hold a state official liable for damages under § 1983; "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had.").

    A.    **Fourth Amendment**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. A Fourth Amendment "seizure" occurs when police detain an individual under circumstances in which a reasonable person would believe he or she is not at liberty to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "There are two relevant types of seizures, each of which requires a different level of justification: (i) an investigatory (or *Terry*)[1] stop . . . and (ii) an arrest . . . ." *Smith v. Vill. of Brockport*, 2022 WL 597465, at *11–12 (W.D.N.Y. Feb. 28, 2022) (citing *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992)). Arrests require probable cause, but a police officer may make an investigatory or *Terry*

---

[1] *See Terry v. Ohio*, 392 U.S. 1 (1968).

6

stop "as long as the officer has reasonable suspicion that the person to be detained is committing or has committed a criminal offense." *Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017) (quoting *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016)).

Plaintiff claims violation of his Fourth Amendment rights to be secure in his person and property. Because Plaintiff's detention on August 14, 2023 did not result in his arrest, the Court reviews his seizure according to the standards for an investigatory or *Terry* stop. As explained by the Supreme Court, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see, e.g.*, *United States v. Bell*, 733 F. App'x 20, 21 (2d Cir. 2018). "Reasonable suspicion, like probable cause, is dependent upon both the content of the information possessed by the police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990).[2] Thus, a law enforcement officer may conduct such a stop when they have "a particularized and objective basis for suspecting

---

[2] "Probable cause exists where the facts and circumstances within [an officer's] knowledge and of which [the officer] had reasonably trustworthy information are sufficient in themselves to warrant [an officer] of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (citation omitted). The probable cause standard is not a "high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted). Probable cause does not demand that an officer's belief that a person has committed a crime be "correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). To demonstrate probable cause, the office need only present facts to support "the sort of fair probability on which reasonable and prudent people, not legal technicians, act." *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (citation, brackets, and internal quotation marks omitted). "Information about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated." *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994). However, "[w]hen relying on a witness's report of a crime, the arresting officer may lack probable cause where there are 'circumstances that raise doubt as to the [witness's] veracity.'" *Defalco v. MTA Bus Co.*, No. 18-3007-CV, 2019 WL 4855464, at *2 (2d Cir. Oct. 2, 2019) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)) (alterations in original).

the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014) (internal quotation marks and citations omitted).

Here, Plaintiff alleges that Patrol Officer Knotts told him he was stopped after a witness reported Plaintiff was selling drugs on Fuller Street. No alleged facts support an inference to suggest that the Patrol Officer Defendants did not actually receive this witness report or could not have gained a reliable reasonable suspicion of his criminal activity on the basis of a witness report about his conduct on Fuller Street, where Plaintiff did allegedly sit in the parked car with another individual for a brief period of time. *See United States v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009) (reasonable suspicion existed to stop a suspect when officers were responding to a dispatch that communicated an assault in progress, and the officers confirmed the suspect's appearance matched the description the suspect was present at the specified location). As he has not alleged facts to support an inference that the Patrol Officer Defendants acted without reasonable suspicion, Plaintiff has not alleged a plausible Fourth Amendment violation against any defendant.

### B.   First Amendment Retaliation

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024) (per curiam) (quoting *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)).

With respect to the first element, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). Thus, an individual's "right to criticize the police without reprisal clearly

8

satisfies the first prong of [the First Amendment retaliation] test." *Kerman v. City of New York*, 261 F.3d 229, 242 (2d Cir. 2001). To that end, the Second Circuit has held that speech directed at police officers is protected unless it is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 415 (2d Cir. 1999) (citation omitted). For purposes of initial review, the Court assumes that Plaintiff's alleged "talking back to" Defendant Rogers satisfies this first element of protected speech.

With respect to the second element of causality, Plaintiff must show a "but-for" cause, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *See Nieves v. Bartlett*, 587 U.S. 391, 399 (2019).

Plaintiff's allegations fail to support an inference that the Patrol Officer Defendants were motivated to take adverse action against Plaintiff because of his protected speech on August 9, 2023, five days earlier. Plaintiff has not pled any facts suggesting that the Patrol Officer Defendants were aware of his prior interaction with Rogers on August 9, 2023. *See Hernaiz v. Carlson*, No. 3:24-CV-116 (JAM), 2024 WL 2089355, at *4 (D. Conn. May 9, 2024) (concluding Plaintiff had failed to plead causation against two defendants as he had not provided facts suggesting they knew of his protected activity). Likewise, Plaintiff has not alleged any facts to support an inference that Defendant Rogers had any involvement in the Patrol Officer Defendants' decision to stop Plaintiff on August 14, 2023. *See Wright*, 21 F.3d at 501 (noting that a defendant's personal involvement in any alleged constitutional violations is a "prerequisite to an award of damages under § 1983" (citation omitted)). Thus, Plaintiff has not plausibly alleged facts suggest that Rogers took adverse action against him because of his protected speech.

9

In addition, the Court notes that no allegations support an inference that the Patrol Officer Defendants were acting without reasonable suspicion to stop Plaintiff under the circumstances. *See Nieves*, 587 U.S. at 402 (in the context of an alleged retaliatory arrest, a plaintiff "must plead and prove the absence of probable cause for the arrest," because "its absence will—as in retaliatory prosecution cases—generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite.").

Accordingly, Plaintiff has not alleged a plausible claim of First Amendment retaliation against Defendants. This claim must be dismissed pursuant to 28 U.S.C. § 1915A(b).

C. **Official Capacity Claims**

Claims against municipal officers in their official capacities are treated as if the claims are asserted against the municipality itself. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (noting that suit against municipal official in his official capacity is suit against municipality because liability for any judgment would rest with the municipality). A municipality cannot be held liable in a section 1983 action based on respondeat superior merely because it employs a tortfeasor. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Municipalities are responsible only for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). To state a cognizable claim for municipal liability, Plaintiff must demonstrate the existence of "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020); *see also Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). Plaintiff must show that his rights were violated as the result of a municipal policy, a

municipal custom or practice, or the decision of a municipal policymaker with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

As the Court has determined that Plaintiff has failed to allege sufficient facts to support his claims of Fourth Amendment violation or First Amendment retaliation, Plaintiff cannot proceed on plausible official capacity claims against any defendant.

### D. State Law Claims

To the extent Plaintiff alleges any claims under state law, the Court declines to exercise supplemental jurisdiction over any such claims as all federal claims in this action are dismissed as not plausible. *See* 28 U.S.C. § 1367(c)(3) (providing that the court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it has original jurisdiction). Any state law claims are dismissed without prejudice.

## IV. CONCLUSION

Plaintiff's Complaint is **DISMISSED WITH PREJUDICE** for failure to state any plausible claims under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915A(b). As the Court declines to exercise jurisdiction over Plaintiff's state law claims and finds that amendment of the Complaint would be futile, the Court **dismisses** such claims **with prejudice**. The Clerk is directed to close the case.

**SO ORDERED.**

Hartford, Connecticut
June 7, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge